UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
UNITED STATES OF AMERICA,  :
              S1 05 Cr. 1102 (JFK)
   -against-   :
              <u>OPINION and ORDER</u>
EPIFANIO LABRA,    :

    Defendant. :
-------------------------------X

<u>APPEARANCES</u>:

    For the United States of America:
     MICHAEL J. GARCIA
     United States Attorney for the
     Southern District of New York
     New York, New York
     Of counsel: Leslie C. Brown
          Richard C. Daddario
          Assistant United
          States Attorneys


    For the Defendant-Movant:
     Leonard F. Joy, Esq.
     Deirdre D. von Dornum, Esq.
     Federal Defenders of New York, Inc.
     New York, New York


**JOHN F. KEENAN, United States District Judge**

**JOHN F. KEENAN, United States District Judge:**

## Background

Defendant is charged in a two-count superseding indictment with Transportation of a minor with intent to engage in criminal sexual activity (18 U.S.C. § 2423(a)) and Travel with intent to engage in illicit sexual conduct (18 U.S.C. § 2423(b)).

He has moved to suppress post-arrest statements allegedly made by him, through a Spanish interpreter, to Special Agent Keith Kolovich of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"). An evidentiary hearing was held on the motion on January 9 and 10, 2006 at which Agent Kolovich, the Spanish translator ICE Agent Michael Ortiz, Luis Rodriguez, a Job Opportunity Specialist at the Human Resources Administration, and the defendant himself testified.

## Factual Findings

On October 13, 2005, Agent Kolovich and a New York City Detective transported Labra from Central Booking to the Bronx Special Victims Squad. (Tr. 17, 29).[1] The defendant was placed in an interview room where he was handcuffed to a bar on the wall. (Tr. 29-30). Ten to fifteen minutes later, Agent Kolovich, an experienced agent, and ICE Agent Michael Ortiz went into the interview room. (Tr. 17, 30, 82, 85). The handcuffs were removed. (Tr. 30, 85). After being uncuffed, but before

---

[1] "Tr." refers to the Transcript page at the hearing.

questioning began, the defendant, in Spanish, was advised of his Miranda rights.  (Tr. 30-31, 85-86).

Agent Ortiz, the interpreter, has spoken fluent Spanish since childhood.  He advised the defendant of his Miranda rights, in Spanish, (Tr. 83-86), reading from a pre-printed card, which contained the Miranda warnings in English and in Spanish.  (Tr. 86).  Agent Ortiz asked the defendant whether he understood each right.  (Tr. 87-88).  The defendant told Agent Ortiz, in Spanish, that he understood his rights. (Tr. 88).  Having read the warnings from the pre-printed card, Ortiz then translated a pre-printed Miranda waiver form for the defendant. (Tr. 88).  The waiver form also contained each of the defendant's Miranda rights.  (Tr. 88).  Labra signed the waiver form. (GX2).  Labra never said or indicated that he did not understand his rights or any of the Spanish words Agent Ortiz used.  (Tr. 88).

Agents Kolovich and Ortiz testified that Labra's answers were responsive to Kolovich's questions (which Agent Ortiz translated from English to Spanish).  On a few occasions, the defendant spoke uninterrupted in Spanish for as long as one minute.  (Tr. 35, 92).  Agent Ortiz testified that he had no difficulty understanding the defendant's Spanish.  (Tr. 92).  Both agents testified that Labra did not say or indicate that he did not understand any of the questions Agent Ortiz asked during the interview.  (Tr. 35-36, 88, 90-92).

Approximately eight months before the arrest, Labra applied for public assistance benefits at the Human Resources Administration and he was interviewed by Luis Rodriguez, an employee at that office. (Tr. 135). The interview lasted approximately 45 minutes. It was conducted in Spanish. (Tr. 135-37, 146; GX4-D). Mr. Rodriguez discussed a number of issues with the defendant, including Labra's assets, monthly expenses, income, employment history, benefits and other detailed financial information. (GX4-D). Each of Labra's answers, in Spanish, was responsive to the question asked. (Tr. 148-51). On one occasion, Labra spoke uninterruptedly, in Spanish, for about one minute. (Tr. 151). At no time did Labra ever say or indicate to Mr. Rodriguez that he did not understand Mr. Rodriguez' questions or his Spanish. (Tr. 151). Mr. Rodriguez also had no difficulty understanding the defendant's Spanish and no reason to question Labra's proficiency in Spanish. (Tr. 151-52).

In paragraph 2 of his Declaration in Support of the Motion to Suppress, Mr. Labra stated:

> I am a Mexican citizen. Until 2002, I lived in the mountains of Guerrero, Mexico. I grew up speaking Mixteco, the indigenous language of my area. I can speak and understand Spanish at a basic level, but I do not know formal or legal words in Spanish. I cannot understand or speak English. I never went to school. I cannot read or write in any language.

Defendant's version of the questioning on October 13, 2005 is different than the agents'. He claims that he was questioned before being asked to sign anything. (Tr. 192). Further, he argues at footnote 1, page 5 of his Post Hearing Memorandum, that whether he was advised of his Miranda rights is essentially irrelevant "because whether Agent Ortiz accurately told him every word of the advice of rights or not, Mr. Labra's testimony credibly demonstrated that he did not sufficiently understand what was said to him."

The Court rejects that contention and finds that defendant speaks and understands much more Spanish than he is willing to admit for the purpose of these proceedings.

His interview and conversation with Luis Rodriguez at the pubic assistance office demonstrate that he is fluent in Spanish. Mr. Rodriguez is a disinterested observer with no stake in the outcome of the litigation. A fair analysis and review of the Rodriguez testimony discloses that the defendant had no problem communicating in Spanish some eight months before the custodial questioning at issue here.

On October 14, 2005, the defendant was presented in Magistrate's Court before the Honorable Douglas F. Eaton. The following colloquy ensued:

> THE COURT: <u>United States v. Epifanio Labra</u>. Mr. Labra is here in Court. I will now ask the attorneys to state their appearances on the record.

MR. DADDARIO:  Good afternoon, Your Honor. Richard Daddario for the Government.

MS. VON DORNUM:  Good afternoon, Your Honor. Deirdre Von Dornum, Federal Defenders of New York for Epifanio Labra.  Mr. Labra is present next to me in the courtroom and we have the aid of Nancy Admiras [Ph.], Spanish interpreter.

I would ask the Court, Mr. Labra's first language is Masteco[2] and he can understand Spanish, but he needs us to go somewhat slowly as he cannot understand conceptually any technical legal terms. So to the extent possible if we can try to speak simply and slowly and I'll have him indicate to me if he can't understand.

THE COURT:  Fine, have you received a copy of the Pretrial Services Report?

MS. VON DORNUM:  We waive the report.  I read the summary they made based on the marshal's information.

THE COURT:  I have here a three-page typewritten complaint signed by Special Agent Colovich [sic]. Would you stand and raise your right hand?

Do you swear that the allegations in this complaint against Mr. Labra are true to the best of your knowledge and belief?

SPECIAL AGENT [K]OLOVICH:  Yes, I do.

THE COURT:  Mr. Labra, my name is Judge Eaton.  I am a federal magistrate judge.  You have been arrested and charged with federal crimes.  To seal [sic] the details you will have to review this three-page complaint with your attorney. Basically, the Government alleges that you transported a girl under the age of 14 years from Mexico to the Bronx with the intention to engage in sexual activity  in violation of the law of the State of New York.

---

[2]  "Masteco" obviously should read "Mixteco."

I want to warn you that you are not required
to make any statement in response to these
allegations.  If you already have made some sort
of a statement you do not need to say anything
more now.  If you start to make a statement you
always have the right to simply stop talking at
any time.  Any statement that you do make to the
authorities can be used against you.  Do you
understand what I have said so far?

THE DEFENDANT:  Yes.

THE COURT:  You have the right to employ an
attorney of your own choosing at any time.
You also have the right to submit a financial
affidavit to me and to request me to appoint an
attorney for you.  I have reviewed the financial
affidavit that was filled out by Ms. Von Dornum
and signed by you today and I will appoint
Ms. Von Dornum to be your attorney free of charge.

THE DEFENDANT:  That's good.

THE COURT:  It is good.  It's very good.

The above quoted exchange, before a judicial officer
with a Spanish interpreter and the participation of counsel,
shows that Mr. Labia understood the proceedings in Court.  Even
if the pace of the translation was slowed down, legal terms were
used and the defendant understood them.  He never expressed an
inability to comprehend and his counsel never expressed any
difficulty with the translation.  This is in stark contrast to
the defendant's testimony during this hearing (cf. e.g. Tr. 188,
189).

I find the defendant's credibility seriously impaired
by his demonstrably false claim of lack of fluency in Spanish.
Further, I find that Agents Ortiz and Kolovich testified

truthfully concerning the Miranda warnings and defendant's understanding of them.

## Discussion

At a suppression hearing, the Government has the burden of establishing that a defendant has effectively waived his Miranda rights by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168-69, 107 S.Ct. 515, 522-23, 93 L.Ed.2d 473, 485-86 (1986); United States v. Anderson, 929 F.2d 96, 99 (2d Cir. 1991).

The Government has more than met that burden. Although the defendant may not speak Shakespearean English or Cervantes' Spanish, he was effectively warned and waived his right to counsel and to remain silent.

**SO ORDERED.**

Dated: New York, New York
February 6 , 2006

**JOHN F. KEENAN**
United States District Judge